UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CHARLES R. LOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV421-187 |
| ) | |
| CPL ROSER and LPN MAXWELL, ) | |
| ) | |
| Defendants. ) | |

## ORDER

*Pro se* plaintiff Charles R. Low, an inmate at the Chatham County Detention Center in 2021, filed a 42 U.S.C. § 1983 Complaint alleging deliberate indifference to his safety and his serious medical needs. *See* doc. 1 at 3, 7-11. The Court previously granted him leave to proceed *in forma pauperis*, doc. 4, and he returned the required forms, docs. 6 & 7. The Court, therefore, proceeds to screen his Complaint. *See* 28 U.S.C. § 1915A.

The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A. *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001). As a result, the Court accepts the allegations in the Complaint as true and construes

1

them in the light most favorable to the plaintiff. *See Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations that are nothing more than "[t]threadbare recitals of elements of a cause of action," however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts in the Complaint do not state a claim for relief that is plausible on its face, the Court may dismiss the Complaint. *Id.*; *see also Bumpus*, 448 F. App'x at 4 n.1; 28 U.S.C. § 1915A(b)(1). Because Low is proceeding *pro se*, the Court construes his pleadings liberally and holds them to a less stringent standard than pleadings drafted by attorneys. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

I. **BACKGROUND**

Low alleges that on April 25, 2021, a group of inmates who were not authorized to be in the day-room were loitering in front of his cell, Cell # 7. Doc. 1 at 7-8. The inmates began "harassing [Low] and threatening violence." *Id.* at 8. While they were threatening Low, one of the inmates told the officer in the control booth, Sgt. Roser, to "pop Cell 7." *Id.* at 7, 9. "Popping" a cell is jail slang for unlocking a cell door. *Id.* at 9. Roser unlocked the door. *Id.* Low alleges that Roser knew the inmates outside his cell were harassing him and that Roser opened the door "with

deliberate intentions to harm Low." *Id.* The inmates entered Low's cell and attacked him. *Id.* Low was "punched, kicked, and stomped, then choked out." *Id.* When Low regained consciousness, he explained to the responding officers that Roser had opened the cell door for the attack. *Id.* The officers reviewed security footage and confirmed that Roser opened the door. *Id.*

Soon after the attack, LPN Maxwell came into Low's cell to examine his injuries. Doc. 1 at 10. Low explained that his vision in his left eye was "fractured." *Id.* at 11. Maxwell did not document Low's injuries or call an emergency medical technician ("EMT"). *Id.* at 10-11. He used his phone flashlight to check Low's pupil response and "informed Low that he would be fine." *Id.* Low received Tylenol and a bag of ice. *Id.* at 11.

The "fracture" in Low's vision worsened. Doc. 1 at 11. He notified the medical department of his worsening vision on April 26, 2021, and was taken to Memorial Hospital for a CAT scan the next day. *Id.* On May 24, 2021, an eye specialist examined Low and determined that his left eye's retina was partially detached, leaving him with permanent damage. The specialist told Low that if he had received medical attention sooner after the incident, his vision would not have worsened. *Id.*

In addition to the detached retina, which caused partial vision loss, Low alleges he sustained the following injuries as a result of the attack: C2-C3 compression in his neck, a contusion behind his left ear, a broken nose, two black eyes, ruptured blood vessels in both eyes, three loosened teeth that eventually had to be pulled, hearing loss in his left ear, and continuous migraines. Doc. 1 at 10. He also alleges that the attack has caused anxiety and insomnia. *Id.* Low is suing Roser for deliberate indifference to his safety and security because Roser opened his cell door to the inmates who were threatening him. *Id.* at 7-10. Low is suing Maxwell for deliberate indifference to his serious medical need due to Maxwell's failure to "take the appropriate steps to address" his eye injury. *Id.* at 10-11.

## II.   ANALYSIS

To succeed on an Eighth Amendment deliberate-indifference claim, a plaintiff-inmate must show: (1) that the alleged deprivation is, "objectively, 'sufficiently serious,'" and (2) the defendant-official acted with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 834, 839 (1994) (internal citation omitted). To establish subjective recklessness, the plaintiff must show "that the

defendant was actually, subjectively aware that *his own conduct*," whether that "conduct" be action or inaction, "caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, ___ F.4th ___, 2024 WL 3354963, at *6-*7 (11th Cir. July 10, 2024) (emphasis added). Even if a defendant was aware of a substantial risk to a plaintiff-inmate's health or safety, if the defendant "'responded reasonably to the risk,'" he cannot be found liable under the Eighth Amendment. *Id.* (quoting *Farmer*, 511 U.S. at 844-45). Courts evaluate whether a defendant responded reasonably to a substantial risk to the plaintiff's health or safety objectively. *Id.*, at *8 (Jordan, J. concurring) (citing two decades of Eleventh Circuit precedent) (Jordan, J., concurring).

For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to a substantial risk to an inmate's health or safety. *See Wade*, 2024 WL 3354963, at *2. On July 10, 2024, in *Wade v. McCade*, the Eleventh Circuit determined that those standards were inconsistent with Supreme Court's decision in *Farmer v. Brennan* and clarified that courts in this circuit should apply the subjective recklessness standard articulated above. *See generally id.*

To the extent prior Eleventh Circuit deliberate-indifference cases are not inconsistent with *Wade*, "they should continue to be cited as binding precedent." *Id.* at *10 (Jordan, J., concurring).

> A. Claim Against Roser

Prison officials must "take reasonable measures to guarantee the safety of the inmates," *Farmer*, 511 U.S. at 832 (internal quotations and citation omitted), and "[a] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury," *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). To establish an Eighth Amendment deliberate indifference claim based on a failure-to-protect, Low must allege facts sufficient to show: "(1) a substantial risk of serious harm; (2) [Roser]'s deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Low has sufficiently alleged that he suffered serious injuries as a result of Roser's actions. *See Wade*, 2024 WL 3354963, at *7 (citing *Farmer*, 511 U.S. at 834); *see also* doc. 1 at 10 (detailing the injuries he suffered in the attack). However, his allegation that Roser was aware

6

that the inmates surrounding his cell were threatening him and opened the door with the intent to harm Low is conclusory. *See Ashcroft*, 556 U.S. at 678; *see also* doc. 1 at 9. Whether Roser was "actually, subjectively aware" that opening Low's cell door would cause "a substantial risk of serious harm to" Low is an element of this claim, and Low must support his assertion that Roser actually, subjectively aware that opening the cell door would result in Low getting hurt with specific factual allegations that directly demonstrate Roser's awareness or allow the Court to infer Roser's awareness. *See Wade*, 2024 WL 3354963, at *7. "Threadbare recitals of elements of a cause of action,"—like the conclusory assertion of Roser's "deliberate intentions,"—are insufficient. *Ashcroft*, 556 U.S. at 678.

Additionally, the facts, as pled, are insufficient to demonstrate that Roser knew the inmates posed a *substantial* risk to Roser's safety. He asserts generally that inmates were harassing and threatening him, but does not detail the harassment or the threats. *See* doc. 1 at 8-9. Prison "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility. The unfortunate reality is that threats between inmates are

7

common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (internal quotations and citations omitted). What, exactly, the inmates said matters. The threats must have been such that Roser, if he was aware of them, could have concluded that Low faced a *substantial* risk of *serious* harm. Generally erratic behavior or vaguely ominous statements are not necessarily sufficient to indicate a substantial risk of serious harm. *See, e.g.*, *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (holding that complaining that a cellmate was "acting crazy, wanting to fake a hanging, and making a statement that Plaintiff would help in the fake hanging 'one way or another'" was insufficient "to make the inferential leap that a substantial risk of serious harm to Plaintiff existed"). Specific, contextually-credible threats, on the other hand, generally are sufficient. *See Rodriguez v. Sec'y for Dept. of Corr.*, 508 F.3d 611, 620-21 (11th Cir. 2007) (concluding that members of the plaintiff's former prison gang threatening to kill him upon his release into the general prison population was sufficient to put defendants on notice of a substantial risk of serious harm to the plaintiff).

Low's allegations that Roser knew the inmates were harassing him and that the inmates were "threatening violence," doc. 1 at 8, without more detail, are not sufficient to show that Roser deliberately disregarded a substantial threat of serious harm to Low. Because a more carefully drafted complaint–one that details the inmates' threats against him and why he believes Roser was aware that opening his cell door would put him at risk of serious harm–could state an Eighth Amendment deliberate indifference claim based on a failure-to-protect, the Court will give Low an opportunity to amend his claim against Roser. *See Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least once chance to amend the complaint before the court dismisses the action.").

### B. Claim Against Maxwell

"Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). To establish an Eighth Amendment claim based on inadequate medical care, Low must allege facts sufficient to show that

9

Maxwell engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The objective component to deliberate indifference in this context, *see Wade*, 2024 WL 3354963, at *7, requires that Low establish "an objectively serious medical need[–]one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *see Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (internal quotations and citations omitted). Second, Low must show that Maxwell acted with deliberate indifference to his serious medical need by demonstrating that Maxwell was subjectively aware that his own inaction caused a substantial risk of serious harm to Low and that Maxwell unreasonably disregarded that risk. *Wade*, 2024 WL 3354963, at *7. If Maxwell acted reasonably, he cannot be held liable under the Eighth Amendment. *Id.*

Assuming without deciding that Low's complaints about "fractured" vision was an objectively serious medical need, *see Brown*, 387 F.3d at 1351, Low has not stated facts that establish an Eighth Amendment deliberate indifference claim based on inadequate medical care because

10

he has not alleged facts that demonstrate that Maxwell "was actually, subjectively aware that" failing to take additional action regarding Low's fractured vision "caused a substantial risk of serious harm," *Wade*, 2024 WL 3354963, at *7. The Complaint does not contain any allegations that Maxwell knew his failure to call an EMT or give Low additional medical care the night of the attack would cause Low's vision to worsen and lead to permanent eye damage. *See generally* doc. 1. In fact, the allegations in the Complaint actually shows that Maxwell, who checked Low's eyes, believed that Low "would be fine." *See* doc. 1 at 11.

Maxwell did not "deliberately disregard" Low's complaints "without any investigation or inquiry." *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1328 (11th Cir. 2007). He examined Low's injuries, checked Low's eyes, decided that Low would be alright, and left Low with painkillers and ice. *See also* doc. 1 at 10-11. Maxwell provided *some* treatment–even if it was not the best treatment or the treatment Low requested. Medical care provided to prisoners is not constitutionally required to be "perfect, the best obtainable, or even very good," and "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of

11

cruel and unusual punishment." *Harris*, 941 F.2d at 1505, 1510 (internal quotations and citations omitted).  Even though Maxwell's prognosis was incorrect, "a complaint that a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S at 106.

Under the circumstances, Maxwell's decision to not call an EMT or take other immediate action in response to Low's complaints about his fractured vision the night of the attack was not subjectively reckless under criminal law. *Wade*, 2024 WL 3354963, at *7.  The facts, as pled, show that Maxwell was not aware that his failure to give Low additional medical attention the night of the attack would put Low at risk for worsening and eventually permanent eye damage; he told Low that Low "would be fine."  *See id.*; *see also* doc. 1 at 11.  "[A] complaint that a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S at 106.  Because he cannot establish that Maxwell's conduct constituted subjective

12

recklessness as used in criminal law, Low cannot state an Eighth Amendment deliberate indifference claim based on inadequate medical care. *See Wade*, 2024 WL 3354963, at *7. Accordingly, his claim against Maxwell is **DISMISSED**. Doc. 1, in part; *cf. Jenkins*, 620 F. App'x at 711-12 (holding that a Court need not give a *pro se* plaintiff leave to amend where amendment would be futile). The Clerk is **DIRECTED** to remove LPN Maxwell from the docket.

## III. CONCLUSION

Low's claim against Maxwell is **DISMISSED** because he cannot state a claim for deliberate indifference based on inadequate medical care. Doc. 1, in part; *see also* 28 U.S.C. § 1915A(b)(1). However, a "more carefully drafted complaint might state a claim" against Roser. *Jenkins*, 620 F. App'x at 711. The Court will therefore give Low the opportunity to file an amended complaint as to his Eighth Amendment deliberate indifference claim based on failure to protect against Roser. *Id.* Low is **DIRECTED** to submit an amended complaint against Roser by July 26, 2024. Low is advised that his amended complaint will supersede his original pleadings therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999)

("An amended complaint supersedes an original complaint."); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982).  In other words, Low must include *all* factual allegations in support of his deliberate indifference claim against Roser in his amended complaint.  The Clerk is **DIRECTED** to enclose a blank copy of Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)) with the service copy of this Order for Low's convenience.  Failure to timely file an amended complaint may result in a dismissal.  *See, e.g.,* Fed. R. Civ. P. 41.

Finally, the Court must assess Low's filing fee.  *See* 28 U.S.C. § 1915(b).  Low's prisoner trust fund account statement reflects no average monthly deposits of balance.  *See* doc. 7 at 1.  Based upon his furnished information, he does not owe an initial partial filing fee.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's filing fee has been paid in full.  In the event Low is transferred to another institution, his present custodian

shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to Low's new custodian. The balance due from Low shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED**, this 12th day of July, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA